Okay, we'll now hear argument in the United States of America v. Juvenile Female and Juvenile Male. All right, so Mr. Siegel, you're doing Juvenile Female, is that right? That's correct, Judge. I've gone paperless, but sometimes that's slower than paper, I have found. So anyway, all right, you may proceed. May it please the Court, my name is Jesse Siegel, and I represent the young woman known in these proceedings as Juvenile Female. At the transfer hearing in this case, Juvenile Female presented overwhelming, uncontroverted, and frankly uncontrovertible evidence establishing that she does in fact have great potential to be rehabilitated, in fact that the process of her rehabilitation was well underway. She provided a mitigation report that had a lot of information from her teachers at the Sojourn High School. That's for us an abuse of discretion by the District Court, correct? Absolutely. The District Court considered all these things, right? He just sort of reached a different conclusion than you're arguing for, right? I think he overlooked something. Well, I think there's, there are two answers to that question. One is that the Court evaluated the various factors incorrectly, in my view, which I'll explain. He weighed them improperly, is what you're saying. Well, I don't think so. I don't think that this is a situation where I'm urging the Court to look at the same factors in the same way as the District Court and draw a different conclusion. My question is a very simple one. Are you saying that Judge Bianco overlooked certain facts, that there were things in the record that he didn't consider or didn't weigh at all? I cannot say that. All right. I think that... You're saying you didn't like the way he weighed them. Not simply that I didn't like the way he weighed them, but that he weighed them incorrectly because he... He looked at her age, which was just, she was 17 instead of 18, but principally, I think he looked at the severity of the conduct, of the crime that was committed here, and her deep involvement with the other defendants in this case, and her lack of remorse. And all of those, I believe he felt, could not be adequately accommodated by the juvenile justice system. Well, notwithstanding all the other items that you point, potential for rehabilitation, which I think is maybe true in some instances more than others, and the fact that she was in good, her behavior was okay while she was incarcerated, but these were all judgments within the province of the District Court, weren't they? Well, what I would submit is that the court gave improper weight to the evidence of the seriousness of the crime. The JGADPA does not make its protections of juveniles unavailable to people accused of very serious crimes. But essentially... Well, if you've charged murder, then nothing matters. He didn't say that. He did not say that, but essentially that's what the case is about. On one hand, there's uncontrovertible evidence that this is a person who has great potential for rehabilitation, which she has demonstrated, and it's a serious crime. Let me assume that I agree with you that the record shows that she has great potential for rehabilitation. If she is treated as a juvenile, what I want to know is, do you agree that the worst that could happen to her in sentencing is that she would spend five years in custody being rehabilitated? Is that correct? That is correct. And she was arrested at age 17 and a half or something like that? A little bit less. 17 and about four months, four and a half. Okay. So in two and a half years after that arrest, she will turn 21. What is your understanding of, if she is treated as a juvenile, what happens to her at age 21? Okay, so first of all, I think it would be, unless my math is wrong, three. 17 and a half plus two and a half doesn't, no, that's three and a half. Okay, three and a half years. Right. You're better. I'm sorry to interrupt. So at the age of 21, she would be transferred from a juvenile facility, which is where she is now, which, by the way, is an absolutely terrific facility, which has gone a long way towards rehabilitating her, into an adult facility. Or the balance of her juvenile sentence. That is correct. It would be a year and a half. Correct. As a matter of fact. So we're not assuming, I take it, that adult facilities are great at rehabilitating 21-year-olds. So what I'm focused on is you're saying that it is, in effect, it doesn't seem to me that the district judge's decision is, is this a person capable of being rehabilitated? The question is, is this a person who is capable of being rehabilitated by the juvenile justice system if she is committed to that system? And so what you're saying, it seems to me, is that it would be an abuse of discretion for the judge to decide that, given the conduct in which she engaged, and given the history that you emphasize about her neglect and abuse over a long lifetime, that three and a half years in a juvenile facility is going to do great, and she's going to get out after that three and a half years, plus a year and a half committed to the tender mercies of the adult justice system, when she gets out, she'll be fine. And if the judge had to think that, that that was okay, it's an abuse of discretion not to conclude that that's an unreasonable prognosis, or at least not a prognosis he thinks is appropriate? Yes. Yes. Okay. Okay. And by the way, I mean, if we're looking at the consequences, can I ask you, if she is treated as an adult, if she is transferred to adult custody, adult treatment, under the existing charges against her, if she is convicted of those charges, she would be subject not to five years of detention, three and a half in juvie, and one and a half in an adult prison, she would be subject to a sentence of life imprisonment without parole. Is that correct? No, not without parole. No. Actually, I think under the... She's not charged with murder, native racketeering or something that has a mandatory life sentence? I believe that a life sentence is unconstitutional imposed on a juvenile under Miller and Montgomery and that line of cases, unless the juvenile is shown to be, I think the words were permanently incorrigible. Okay. And whatever. But, Judge, just, I see I'm well over, but... It's quite a stark set of alternatives, though, as between what happens in the juvenile system and what happens in the adult system. There's not much of a middle ground in there, it seems like. Right. Well, the two juveniles sentenced in the same case so far have received sentences of 50 and 55 years. I thought they were not juveniles. Weren't they 18? Isn't that how they got to where they are? I believe they were juveniles. They were juveniles and they were transferred to adult custody? Correct. Okay. Correct. But a different way of looking at it is that if this transfer motion, which was issued in about June of 2018, at that point, a juvenile female had spent about a year or so, or close to a year, at the Essex County facility. She's continued to have the same tremendous progress in the years since then, or more than a year since then, she would now have another year there. If she was transferred to adult status when this decision was issued, all that would have gone. Right. These are not mandatory minimums if she is transferred, correct? The district judge can make a determination as to how long the sentence would be within, you know, it could be ten years to life, right? If she's transferred to adult status, that's correct. Right. And I'm not saying, I'm picking ten years arbitrarily. It could even be less than that. Theoretically, but highly theoretically. In theory. Yeah. All right, Mr. Siegel, you've reserved two minutes, so we'll hear now from Mr. DiChiara. Good morning, Your Honors. My name is Gerald DiChiara, and I represent the juvenile mail. I would go right to the heart of my argument, which is that there are participants in a crime, and there are participants in a crime. And there's a distinction between the roles that each individual plays. We were never afforded the opportunity to find out what my client did in this case. It's clear that he was charged with murder, but we weren't advised what he did. Was he a lookout? Did he handle a machete? What did he do? And I think that that's important that the court should know when deciding the decision and making a decision. Because I think that the transfer process is flawed fundamentally when we deal with gang crimes. Because it does not allow for individual evidence or require the prosecutor to present individual evidence. The prosecutor answered in his brief, we didn't have to. But I ask the court that we do that, especially when my client has been designated a para, and there was a conflict as to whether that means he's actually in the gang or he's not in the gang. But it certainly indicates that he's a low-ranking member. If a member at all. And why this goes to the heart of this, it goes to the factor of the nature of the crime. And the nature of the crime, the court held that it's the most important and of utmost importance in making the decision as to whether or not to transfer. And, of course, you have a brutal crime here. So the court weighs that the defendant should be transferred. But I think that— Your only reason, though, are you also— No, I understand that, Your Honor. But without knowing what he is alleged to have done, I think that weighs on every single factor that the court would decide. And by not giving us that, the nature of the crime in a group situation has to be more than the charge. It's— So what you're saying, you're entitled to some sort of mitigation analysis? I'm entitled— Like in a capital case that you'd have to sort of be able to be entitled to— In the Nelson case, it was easy. The man stabbed a person because he was Jewish, and he died. And so they transferred him. But when you're dealing with a group, and in this case, there's upwards of 20 people involved, we don't know what the person—and in my case, my client is supposedly done—commit the crime. All we know is that we're supposed to assume that he committed the crime. So I'm a little confused. Are you saying that Judge Bianco did something wrong, or are you saying that the factors that have been laid out as the ones to be considered are under-inclusive? I think it's an abuse of discretion for a district court not to require the prosecution in a group situation, to not require the prosecutor to give the defense attorney some indication as to what this person did, other than to say he's a member of MS-13 because he's a para and he committed the crime. I think that it's important because if the goal of the Juvenile Act is rehabilitation, how could you properly weigh whether a person can be rehabilitated if you don't know what he supposedly did? Can I try and focus on what it is that Judge Bianco did wrong, in your view? Are you saying, in effect, that this is like the categorical approach to what's a violent crime, that if the government won't tell us what exactly your client, Juvenile Nail, did in the murder, that the judge should have assumed that he was guilty of the least act you could possibly do that would make you an accomplice to this crime? I would think that that is a fair statement of my position, Your Honor. But, of course, that has no— But that's not what happened here. Yeah, but it's also not part of the statutory text. No, but what the statutory text— It talks about the nature of the alleged offenses— Right. —presumably charged. But it lays out six factors, as the court is aware. But they all apply to the individual, except for the crime. The crime, in a group setting, doesn't apply to the individual. But the judge has to make an individual determination and make an individual assessment as to whether the Juvenile Act should be applied, whether transfer should not be granted or not. But how can he do that if he doesn't know all the facts? And how could defense counsel properly attack the transfer request of the government? What you're saying—I'm not sure I found this in the brief, but it's an interesting argument. What you're saying is, assume that all the other factors line up in favor of your client, except for the severity of the offense. The question would be very different if the defendant had a very, very minor role that technically made him an accomplice to murder than if he had been the one who planned it, organized it, and then showed up with a machete and a hammer and beat somebody and stabbed somebody to death. Someone in the latter circumstance, it might well be a reasonable judgment that in spite of whatever else is favorable in his record, he should be transferred to adult custody. But someone who is charged with the former, with just being the most minimal possible accomplice, maybe should not be transferred to adult custody. And on this record, we don't know which is your client? Absolutely. Okay. That sounds like a substantive due process challenge to the statute. Is that really what you're doing? I don't think so, Your Honor, because, as I said, the six factors are individual— they're directed to the individual. Five of them are. Well, five of them are, if you want to read it that way. But I believe that you're deciding transfer, and you're deciding— The defense is also tethered to the individual. He's been charged with a crime, a very serious crime. It doesn't give—it's not a speaking indictment, or it's not a bill of particulars as to what happened. No, that's true, Your Honor, but you were a former prosecutor, a judge in the district court for a long time. You know that not every defendant in a co-conspirator case is treated the same way. They get different pleas. They get different sentences. And all I'm asking is that my individual have the ability to have a different result because of his role in the crime. You're asking for the considerations that would apply in an adult case at sentencing apply to the transfer. I think that they do, Your Honor, and I think that's because— But the statute does talk about interest of justice, the interest of justice as it's applied to an individual. If it's the interest of justice that we're dealing with, and we're talking about the nature of the crime, we're talking about the individual's role in that crime, and that's my argument. Okay, thank you, Mr. Dicari. We'll now hear from the government. Mr. Scotti. And, Mr. Dicari, you reserved two minutes, right? Right. Thank you, Judge. Excuse me. Good afternoon, Your Honors. May it please the Court, Paul Scotti on behalf of the government. Your Honors, the district court here issued a very detailed and lengthy decision granting transfer. In that decision, it carefully analyzed all the 5032 factors. It also looked in detail at each of the arguments in mitigation that were promoted by the appellants, and transfer of both of these appellants was fully supported by the evidence, was not clear error or abuse of discretion. Your Honor, this case itself is very unique, first and foremost, from the extraordinarily serious nature of these offenses, which obviously weigh heavily and overwhelmingly in favor of transfer, as does the age, just from a starting point. The ages of both of these appellants, both at the time of the murders, juvenile male was just two months shy of his 18th birthday, as well as the age of the juvenile female, who was almost 17 and a half years old. Both of them were over 18 at the time of the hearing. Now, the Court was entitled to weigh these factors as it sees fit. The case law is clear on that. It's also entitled to place more emphasis on the seriousness of the crime. It is very difficult to imagine any crime, any set of circumstances or factual allegations, that could be more serious than this. But the Court still didn't stop there. Contrary to what the appellants are arguing, this was not a bright-line test at all. Judge Bianco went through painstaking detail to go through each of the other factors and, in fact, determined that the social background as well, another important factor for both of these appellants, also weighed in favor of transfer. And by looking at the decision, there's no way that that can be interpreted as clear error or an abuse of discretion. Your Honor, I do want to address Mr. Siegel's argument here with respect to the uncontroverted rehabilitation that has taken place with respect to the juvenile female. Respectfully, the government would rebut that argument here. The first sign of rehabilitation Are you rebutting sort of post-briefing or post-decision rehabilitation? No, Your Honor. I'm rebutting that since she's been in custody at the juvenile facility, that she has demonstrated that she's being rehabilitated while she's in juvenile system right now. I think we really ought to stay focused on what was before Judge Bianco and what he relied on or didn't rely on in his decision. I'm not sure that things that have happened since then are part of the record or appropriate for us to consider. Your Honor, I apologize. I didn't mean to presume. I didn't mean to say that I was going to discuss anything beyond the Court's decision. These were facts that the Court did consider. And again, as I said before, the Court considered all of these mitigating arguments, which included from the juvenile female that she was doing very well in school, she had AIDS, that she had positive reports from all of her teachers. And those are all things that the appellant argued showed that she was being rehabilitated. But what the Court looked at and what is reasonable here is that if she really was being rehabilitated here, the first step for rehabilitation after committing a crime like this would be disengagement from the gang. That is something that, as came out at the hearing, she did not do. She maintained contact with her MS-13 boyfriend while she was in school. So while she was performing well in school, that is evidence that she's very smart, that she's very bright. But it's not necessarily evidence of rehabilitation after committing such a horrific crime that you think would startle someone after participating in that and especially now being in the situation she was in to turn her back on that boyfriend who is an active member of the gang under federal charges and is still a loyal member of the gang. You would think she would turn her back away from that, but she has not. She has maintained that connection, which the District Court, as it did, was entitled to view as her continued allegiance to the gang and a lower likelihood of rehabilitation. So just with respect to that, with juvenile female there, there was ample evidence, and the Court permissibly did consider her to be a low likelihood of rehabilitation based on the evidence that was at the hearing. It's not uncontrovertible at all. In fact, the evidence weighs in favor of the fact that she does not have a good likelihood to be rehabilitated. Could I ask a question about Mr. DiChiara's argument? I take it he's suggesting that it would matter to the exercise of discretion whether one of these juveniles played a minor role or a major role in the offense. And that confused me a little because I thought that in Mr. Siegel's brief it was anyway. Maybe it wasn't Mr. DiChiara's brief, that there was an argument that the Court should not consider at least what the government says was the person's role in the offense, but should merely consider that the person is guilty of the bare-bones element of the crime and not look at, you know, you have to assume the person is guilty, but you don't assume that they have done everything that the government says they've done. What do you think it is? I mean, how should a judge go about assessing this? Is it to say, well, it's murder and that's all I have to think about, or should the judge be taking into account what at least the government says or what some evidence is in the record of what the person actually contributed to the outcome? Yes, Your Honor, and Your Honor is correct. Mr. Siegel's argument was that the government or the Court had too much information about the murder, and Mr. DiChiara's argument in favor of juvenile mail was that it didn't have enough. Of course, they could both be right if there's a lot of information about one client and not very much about the other, but yes. Yes, Your Honor, and I would start with addressing Mr. DiChiara's, and I would point to the point made by Your Honor before. Mr. DiChiara's arguments are more appropriate for sentencing after either conviction or trial. These are mitigation issues that go to what the ultimate sentence should be. Aren't they very closely related? Because when you're assessing what the sentence should be, aren't you thinking about the same sorts of things, which is is this an incorrigible bad person who's done all kinds of horrible things and has a bad character and is very dangerous, or is this somebody who did something in a moment that was uncharacteristic and that they're capable of being rehabilitated from, and some of the evidence there is based on the fact that they played a very small role? I mean, isn't that exactly the same kind of judgment that you're making here? Your Honor, what I would say is that the transfer hearing, as has been laid out by statute and supported by case law, is a determination of where the proper forum is here,  One of the factors is the key, I thought, was the ultimate decision is is the juvenile justice system appropriate for this person because it offers the opportunity for rehabilitation? Correct, Your Honor. And one of those factors is obviously the nature and seriousness of the offense here. Doesn't it matter? Is it purely a question of the abstract offense? You wouldn't ever say to a judge in this circumstance, Look at what this guy did. He beat somebody to death with his bare hands while the person was pleading for mercy, and that shows that this is the kind of crime that demonstrates that this is not a person who's appropriate for juvenile treatment? You would make that argument, wouldn't you? I would, Your Honor, but I would point out to the court that what the court does But it's not appropriate for the defense to make the argument that this person, yes, the allegation is they knew that somebody was going to participate in a murder and they drove that person to the scene of the crime under some emotional or psychological or even physical pressure, but, yeah, they're technically guilty of murder. They're not allowed to make that argument that this person did so little that that weighs in favor of juvenile treatment? Well, Your Honor, what I would say is, and in this particular case, with this particular appellant, juvenile male, what the court has been provided with facts and evidence that, with facts, factual allegations, that he was associated with the MS-13 gang. He challenges the strength of that evidence. There's also discussion by the district court of just the argument that Judge Lynch suggested that the defense lawyer could make. I'm looking at page 11 where it talks about the defense counsel's argument about the lack of any evidence that he participated in the crimes and that he further asserted the evidence of defendants' membership in the gang is solely based on the word of cooperating defendants, et cetera, and the judge considers all of that. Yes, the judge does, Your Honor, and the judge points that Oh, it's more nuanced than just, oh, it was murder. Yes, Your Honor, it is, and it should be because the nature of defense here isn't just the statutory language, but a court is entitled, as the court was saying, to know some more of the information. But the court does know, and to my point again before, is that this isn't a situation where we have, you know, a robbery where the appellant was the driver in a getaway car and it was a robbery gone wrong. I mean, what we have here and what the court knows and what the court had in the record was that the appellant was an associate of the MS-13 gang, that the appellant was present on the night when the MS-13 members were in their base of operations, decided they were going to kill these rivals, handed out weapons, and he was present when they went and approached. There were a lot of people involved. It was at night. So when the appellant says that there's no way of knowing whether he had a machete or whether, hey, he had a club or whatever he had, the point is in the analogy The evidence is he was there at the meeting where they decided to kill people. He then goes after the weapons are distributed with the people to the scene of the crime. And he's there when that's taking place. And he participated. He participated, whatever that, to the extent that is, to require the government to establish that at a hearing would transform it from its intended purpose, which is to determine proper venue and turn it into an evidentiary hearing where the government has to, or challenging the government's evidence. And that's simply not what was intended by the statute. It's not a question of challenging the government's evidence. I mean, that's one of the other puzzles that Mr. Siegel was raising, that the case law says that the judge is supposed to accept the guilt of the defendant, including, I take it, you would say, whatever the government has said is the person's role. And I guess what I'm just coming back to is, was there a request for some more specific statement of what Juvenile Mill's role was in the district court that was somehow denied by the government or by the district court? No, Your Honor. That argument was raised on the appeal, I believe, Your Honor. That's my recollection, and it is my case. The government turned over Rule 16, Discovery. And what Appellant is asking for here are disclosures akin to pretrial disclosures, which is not envisioned by the statute and really not appropriate given the context, Judge. And then with respect to, I know that the Court also addressed the other argument, and whether there's one thing about disclosures, that's one issue. The other issue here is the challenge of the evidence. And certainly the case law here is well settled, that not only is a court entitled to and supposed to assume the charged crimes as having happened, but also the underlying factual allegations for the exact point that the court indicated. You need to know more than just the statutory language. So the case law on that is clear, Your Honor. Did you see my time was up? So unless the Court has any other questions, the evidence here from the proceedings overwhelmingly supported transfer. It was well articulated in the decision, and the decision should be affirmed. Thank you, Your Honor. All right, thank you. We'll hear from Mr. Siegel for two minutes. Yes, thank you, Judge. I think the phrase that was missing from all of that is burden of proof. The government has a burden of proof at a transfer hearing to establish that transfer is appropriate. And while the case law, as far as I know, simply says that a court is to assume the defendant is guilty of the crimes of which she is accused, it doesn't mean that the court should then also simply accept everything the government says about perhaps an aggravating role in the offense in the same way. If the government wants to say not only is she guilty of this crime, but she also did X, Y, and Z that give her an aggravating role, well then put on a witness at the transfer hearing, or witnesses, or put in some evidence. After all, it is a transfer hearing. It's not a transfer oral argument. What is the problem with the way it was presented to the district court in this situation, as far as your client is concerned? Because her aggravating role was quite evident, at least from the judge's opinion. But I would say that the judge didn't have a factual basis to do that, other than that's what the government said. The judge didn't have any sort of first-hand evidence that would have... More of a trial than we have now. If the government... Opening summations and so forth about whether there should be a transfer based upon the actual evidence, no hearsay, no reports by the government, no reliance upon attorney's statements, that kind of thing. Yes. So, for example, if the government wanted to prove that a defendant was a homicidal maniac, and therefore would put either in a report from a psychologist or put a live psychologist on as a witness. Would the authority that you would cite to us about that being a requirement of any jurisdiction?  Well, I don't think it's actually been addressed, because I think the only thing that is in the case law, and it's in this Court's case law as well as other courts, is simply that the judge shall assume that the defendant committed the crime of which he or she is charged. But nothing beyond that. Nothing about assuming other facts that the government prophesied. Did you make this argument in your brief? I did. And as a matter of fact, I... Did you give any detail about the necessity of this trial that we talked about just now? Yes, I did. It was actually a point in my brief. I think it's delineated point two. I'll read your brief. Which is that, and as a matter of fact, Judge, I put the government and the Court on notice of it at the transfer hearing. So this is an argument I've been making all along. And if I could just briefly address the question of my client's contact with this other member of the MS-13. What the record will show, first of all, in the discussion of the social history, is probably her introduction to these people was when she met with this person, a guy by the name of Jeffrey Amador. And what the record will show is that for some period of time, and Judge Bianco was made aware of this, for some period after time, she sent him some love letters. The government had had the opportunity, had intercepted the letters, had read the letters, and conceded that that's what they were, were love letters. So to say that that somehow militates against the objective proof of her rehabilitation... Well, but I thought the, part of the point of the psychological report was, this is a young woman, a girl, who had very little in the way of family support and sort of drifted into this gang because it and its members, including this boyfriend, provided her with a family environment that made her susceptible to the influence that led her to this crime. And if we're talking about rehabilitation, what's wrong with the government, and I believe Judge Bianco said this too, argument that if she goes right back to this boyfriend, she's going right back into the world that led her to the point of committing murder. And if she's not prepared to cut off her ties with the person who's providing her with the substitute family that she needs, and that person is a gang member who already inveigled her into doing this murder, where's the rehabilitation that matters? Okay. I think it is a fair point to be made, but I don't think it carries the weight that either the government or the judge gave it. Really, this is a 17-year-old girl who has essentially wound up in this situation in the way that Your Honor just described, and to say that if she doesn't immediately cut off contact with that person, she's not rehabilitated. Let's focus on the question of what happens when she goes back on the streets. And it's one thing to say when you're in a facility and now your job is to please the people in that facility. Maybe you do that to the best you can. I'm not saying it's done hypocritically or it's done to make it look like you're rehabilitated, but you're conforming to that environment as best you can. And the question is, what are we projecting down the road? Why are we taking this as evidence of some rehabilitation that makes us secure about what's going to come in the future, rather than saying it's just as possible that when she goes back on the street, she'll conform to the conduct of the street again? When you say it's unrebutted evidence of rehabilitation, I appreciate your point, and I appreciate the point that I think the judge credited as well, that she's doing well in this structured environment, in this situation. But to say that that is sort of irrefutable evidence that she is already rehabilitated or that in another year and a half in this facility, she will be, and this is what we should be focused on, not necessarily. Perhaps irrefutable was putting it a tad strongly, but the evidence itself can't be a gainsaver. The evidence is uncontrovertible, or it is uncontroverted anyway, that the reports from the facility are extremely positive, and the district judge recognized that. But, as I've argued, did not give it the weight that it deserved. Thank you. Okay. Thank you, Mr. Siegel. We'll now hear from Mr. DiChiara for two minutes. I think it may be helpful to just point out to page 17 of the government's brief, and I'll just read this short paragraph. As to the nature of the offense, however, AS argues that the government should have been required to further outline his role in the murders, given AS's claim of a perceived ambiguity as to position in the gang. In fact, though, the government's motion clearly established AS as a lower-ranking member of the MS-13 at the time of the April 11 murders, and that he participated in the brutal murders in furtherance of that membership. Further evidentiary support is not required, as AS is assumed to have committed the charged crimes. So what flows from that? I mean, it seems to me that Judge Bianco, the way he described your client's role, made it seem like it was a relatively minor role compared to Mr. Siegel's client or some of the others who were involved in the crime. No, that's not correct, Judge. What he said is he's a minor member of the organization. What his role was in the actual crime, he has no idea because the government didn't provide it. Well, no allegation that he pulled the trigger, right? Well, there's no allegation that the gun was used at all. No, I mean, I'm using the term. Okay, but what I'm trying to say, Judge, is there's a big difference in the roles of a group of 20 or more people, and you of all people know that, Judge. You've tried a million cases. Well, we all know that. I mean, you've tried a million defendants, and some people you give a very lenient plea bargain to. Why? Because they're minimally involved in the offense. I think that when you make it as minimal involvement in a gang of 20 people that surround five people and then beat them to death, where that was the plan, and you go along with it, that's a very different thing than being the getaway driver or somebody who says in a meeting, yeah, okay, that's fine with me, and then ducks out the back door and doesn't show up. The problem, Judge, is that because of the lack of disclosure, we don't know what he knew, when he knew it, and what he did. We just don't know that. And the answers to those three questions could sway this case one way or the other as to whether or not this person is rehabilitated or not. He also, as my record shows, has done excellently in the program. But Judge Bianco's opinion describes his role as participating in the conspiracy by luring them to a prearranged location in the woods. Did he have a role in luring them? We don't know that. I mean, there was no profit by the government. But the government says specifically he participated in the murders, and more than that, you're not entitled to. All right, well, we'll reserve decision on both cases. Thanks very much.